IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRANDY CHRISTIANSEN, et al.,<br><br>               Plaintiffs,<br><br>v.<br><br>WEST VALLEY CITY, et al.,<br><br>               Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS<br><br><br>Case No. 2:14-CV-25 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants' Rule 12(c) Motion for Judgment on the Pleadings. For the reasons discussed more fully below, the Court will grant Defendants' Motion as set forth herein.

I.  BACKGROUND

Plaintiffs' Complaint alleges that on October 26, 2012, West Valley Police Department ("WVPD") Officers entered a residence where Plaintiffs Terry Christiansen and Brandy Christiansen were residing.[1] Plaintiffs claim the police officers used excessive force against Terry Christiansen.[2] Plaintiffs also claim that Plaintiff Brandy Christiansen was illegally seized and searched.[3]

The Complaint alleges that the WVPD engaged in a pattern and practice of illegal conduct and widespread and systemic corruption, which has been sanctioned by West Valley

---

[1] Docket No. 1, at 1–2.

[2] *Id.* at 2.

[3] *Id.*

City.[4] Plaintiffs claim that Defendant former Lieutenant John Coyle ("Lt. Coyle") participated in and tolerated the wrongdoings within his unit and that former police chief Thayle "Buzz" Nielsen ("Chief Nielsen") failed to properly oversee and supervise his officers.[5]

Plaintiffs bring two claims for violations of civil rights under 42 U.S.C. § 1983. The first cause of action alleges WVPD Officers violated Plaintiffs' Fourth and Fourteenth Amendment rights.[6] The second cause of action alleges Lt. Coyle, Chief Nielsen, West Valley City, and Does 7 through 10 knowingly and with gross negligence, maintained, permitted, and ratified policies and customs that allowed the violation of the Fourth and Fourteenth Amendment.[7]

Plaintiffs' third cause of action is a state-law battery claim against Defendant Sean McCarthy and West Valley City.[8]

Defendants' Motion claims Plaintiffs' second cause of action is inadequately pleaded and Plaintiffs' battery claim should be dismissed for failure to file an undertaking.[9]

## II. LEGAL STANDARD

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)."[10] The same standard is used when evaluating 12(b)(6) and 12(c) motions.[11]

---

[4] *Id.*
[5] *Id.* at 3.
[6] *Id.* at 5–6.
[7] *Id.* at 7.
[8] *Id.* at 8–9.
[9] Docket No. 19, at 7.
[10] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as the nonmoving party.[12]  Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[13] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[14]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[15]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[16]  As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[17]

---

[11] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002).

[12] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[13] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[15] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[16] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[17] *Iqbal*, 556 U.S. at 679 (citations and internal quotation marks omitted).

In considering a motion to dismiss, a district court not only considers the complaint, "but also the attached exhibits,"[18] and "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[19]  The Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[20]

### III. DISCUSSION

The Court's consideration of Defendants' Rule 12(c) Motion will not delay trial and will not render discovery that has taken place unnecessary.  Rule 12(c) states, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Trial is scheduled for April 18, 2016, and the Court's consideration of Defendants' Motion will not delay trial.  Plaintiffs argue that the Court should deny Defendants' Motion because considering the Motion ignores the factual record that has been developed in order to make a threshold inquiry.[21]  In this case, Plaintiffs' first cause of action will not be dismissed and Plaintiffs' third cause of action will be dismissed without prejudice.  The discovery that has taken place will not be rendered unnecessary and will not be ignored because Plaintiffs will still be able to pursue two of its claims.   Therefore, the Court will consider Defendants' Motion.

---

[18] *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[19] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 & Supp. 2007)).

[20] *Jacobsen*, 287 F.3d at 941.

[21] Docket No. 25, at 5–6 (citing *Grajales v. Puerto Rice Ports Auth.*, 682 F.3d 40, 46 (1st Cir. 2012) ("[O]nce the parties have invested substantial resources in discovery, a district court should hesitate to entertain a Rule 12(c) motion.")).

A.  OFFICIAL CAPACITY CLAIMS

Plaintiffs' second cause of action under § 1983 is for *Monell* liability against Lt. Coyle, Chief Nielsen, West Valley City, and Does 7 through 10.  Defendant argues that Plaintiffs' *Monell* claim is inadequately pleaded.

The claims against Lt. Coyle and Chief Nielsen are claims against government employees in their official capacities.[22]  "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."[23]  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . .  [A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."[24]  "When a plaintiff names a municipality and a municipal employee in his official capacity, the claim against the employee in the official capacity should be dismissed."[25]

Therefore, the Court will dismiss with prejudice the claims against Lt. Coyle and Chief Nielsen contained within Plaintiffs' second cause of action.

B.  § 1983 CLAIM AGAINST WEST VALLEY CITY

The § 1983 claim against West Valley City is brought under a theory of *Monell* liability. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the

---

[22] Docket No. 1, 31–40; Docket No. 25, at 7–8.

[23] *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).

[24] *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (internal citation omitted).

[25] *Swasey v. West Valley City*, No. 2:13-CV-00768-DN, 2015 WL 500870, at *1 (D. Utah Feb. 5, 2015) (citing *Kontgis v. Salt Lake City Corp.*, No. 2:11-CV-1078-DAK, 2012 WL 434866, at *6 (D. Utah Sept. 21, 2012)).

Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[26] Where a plaintiff seeks to impose § 1983 liability on a municipality, it is not enough for plaintiff to show that an employee of the municipality was a wrongdoer.[27] Rather, plaintiff must show that the "execution of a government's policy or custom" caused plaintiff's injury.[28]

A *Monell* claim requires three elements: (1) an official policy or custom, (2) causation, and (3) a showing "that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."[29]

"The official policy requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."[30] The Tenth Circuit defines an official policy or custom as either

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to

---

[26] *West v. Atkins*, 487 U.S. 42, 48 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

[27] *Monell*, 436 U.S. at 691 ("[W]e conclude that a municipality cannot be held liable solely because it employs a tortfeasor.").

[28] *Id.* at 713.

[29] *Schneider v. Grand Junction Police Dept.*, 717 F.3d 760, 769 (10th Cir. 2013).

[30] *Id.* (internal citation and quotation marks omitted).

adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.[31]

Plaintiffs base their *Monell* claim on three policies or customs. Plaintiffs allege West Valley City had informal customs amounting to a widespread practice with the force of law, ratified the decisions of subordinate personnel, and failed to adequately train or supervise employees based on a deliberate indifference to the injuries that may be caused. The Court will address each theory for *Monell* liability in turn.

*1. Informal Custom*

To establish municipal liability under the theory of an informal custom or practice, a plaintiff must allege:

> (1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by . . . employees;
>
> (2) Deliberate indifference to or tacit approval of such misconduct by the . . . policymaking officials . . . after notice to the officials of that particular misconduct; and
>
> (3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to . . . custom and that the custom was the moving force behind the unconstitutional acts.[32]

Plaintiffs argue that they have "specifically alleged that countless similarly situated citizens have been mistreated in the exact same fashion as they have."[33] Plaintiffs' Complaint states,

---

[31] *Bryson v. Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal citations and quotation marks omitted).

[32] *Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cnty., Kan.*, 996 F.2d 1035, 1041 (10th Cir. 1993).

[33] Docket No. 25, at 10.

> [I]t has been uncovered that the Narcotics Unit of the West Valley Police Department . . . engaged in a pattern and practice of illegal conduct and widespread and systemic corruption, sanctioned by the West Valley Police Department.[34]
>
> West Valley City admits to rampant corruption and systemic constitutional violations by its officers, including mishandling of evidence, confiscation of drugs for personal benefit, theft of seized property, illegal use of GPS tracking systems, improper use of confidential drug informants, and commission of perjury.[35]
>
> In the past two years, Salt Lake County District Attorney Sim Gill has sought the dismissal of more than 100 criminal cases and the United States Attorney's Office has dismissed more than ten criminal cases as a result of the illegal conduct of the defendant officers and others within the Department. The FBI has also investigated the former Narcotics Unit.[36]
>
> The pervasive and rampant misconduct engaged in by West Valley police officers, and particularly the Narcotics Unit, are evidence of the City's deliberate indifference to the constitutional rights of the citizens of West Valley, as well as evidence of policies and practices that allow for the violations of the Fourth and Fourteenth Amendments, as alleged herein.[37]

Plaintiffs' § 1983 claim against West Valley City alleges violations of the Fourth Amendment "by subjecting Plaintiffs to unlawful search, seizure with excessive force, arrest, [and] imprisonment."[38] Plaintiffs also allege Terry Christiansen was subjected "to an unjustified criminal prosecution in violation of his Fourth and Fourteenth Amendment rights."[39]

---

[34] Docket 1, at 2–3.

[35] *Id.* at 3.

[36] *Id.*

[37] Docket No. 1, at 7–8.

[38] *Id.* at 6.

[39] *Id.*

To support a claim for *Monell* liability, Plaintiffs must allege that West Valley City engaged in "continuing, persistent, and widespread" unconstitutional practices. To do so, Plaintiffs must allege that similarly situated individuals were mistreated in a similar way.[40]

In this case, Plaintiffs allege the systemic violation of the Fourth and Fourteenth Amendments through various types of police misconduct.[41] The listed misconduct, however, does not relate to the type of unlawful search, seizure with excessive force, unlawful arrest, unlawful imprisonment, or unjustified criminal prosecution that Plaintiffs allegedly experienced. For example, the Complaint alleges the systemic "illegal use of GPS tracking systems," which would be a violation of the Fourth Amendment,[42] but is not a Fourth Amendment violation similar to that which Plaintiffs allege to have been victims. Plaintiffs' Complaint fails to adequately allege that similarly situated individuals were mistreated in a similar way because it does not allege West Valley City systemically violated the constitutional rights in the same way Plaintiffs' rights were allegedly violated.

Therefore, under Rule 12(b)(6), the Court finds Plaintiffs' Complaint does not sufficiently allege the "continuing, persistent and widespread practice" element of a *Monell* claim based on informal custom.

Plaintiffs must also sufficiently allege West Valley City policymaking officials acted with deliberate indifference to the alleged constitutional violations after being on notice of the particular misconduct.

---

[40] *Carney v. City of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).

[41] *See* Docket No. 1, at 3, 7.

[42] *See United States v. Jones*, 132 S.Ct. 945, 949 (2012).

Plaintiffs' Complaint states, "West Valley City admits to rampant corruption and systemic constitutional violations by its officers, including mishandling of evidence, confiscation of drugs for personal benefit, theft of seized property, illegal use of GPS tracking systems, improper use of confidential drug informants, and commission of perjury."[43]

Plaintiffs have not identified a policymaker who had notice of the alleged misconduct and then subsequently acted with indifference to the violations. Plaintiffs' Complaint states

> The pervasive and rampant misconduct engaged in by West Valley police officers, and particularly the Narcotics Unit, are evidence of the City's deliberate indifference to the constitutional rights of the citizens of West Valley, as well as evidence of policies and practices that allow for the violations of the Fourth and Fourteenth Amendments, as alleged herein.[44]

This allegation is the type of formulaic recitation of the elements that fails to meet the Rule 12(b)(6) standards. The allegation does not provide factual support, but proffers the legal conclusion that West Valley City acted with deliberate indifference to constitutional rights violations.

Therefore, under Rule 12(b)(6), the Court finds Plaintiffs' Complaint does not sufficiently allege the deliberate indifference element of a *Monell* claim based on informal custom.

Plaintiffs must also allege that there is a direct causal link between the challenged custom or practice and the constitutional violation.[45] Thus, Plaintiffs must demonstrate that the challenged custom was the moving force behind the alleged misconduct Plaintiffs experienced.

---

[43] Docket No. 1, at 3.

[44] *Id.* at 7–8.

[45] *Schneider*, 717 F.3d at 769 (citation and internal quotation marks omitted).

In this case, Plaintiffs' Complaint fails to allege a widespread policy or custom of unconstitutional conduct. Consequently, Plaintiffs' Complaint does not sufficiently allege that the challenged custom was the moving force behind their rights being violated. Plaintiffs' Complaint states,

> Plaintiffs are informed and believe, and thereon allege, that the customs and policies of the West Valley City Police Department were the moving force behind the violations of Plaintiffs' rights. Based upon the principles set forth in *Monell v. New York City Dept. of Social Services,* the City of West Valley is liable for all of the injuries sustained by Plaintiffs as set forth above.[46]

This allegation is nothing more than a recitation of the *Monell* causation requirement. Plaintiffs do not allege any facts to inform the causation element or any facts from which, if true, the Court could infer causation.

Thus, under Rule 12(b)(6), the Court finds Plaintiffs' Complaint does not sufficiently allege the causation element of a *Monell* claim based on informal custom. Therefore, Plaintiffs' claim for *Monell* liability under the theory of informal custom is inadequately pleaded.

*2. Ratification*

Under *Monell*, a municipality may be held liable if a final municipal policymaker ratifies the unlawful conduct or decision of a subordinate and the basis for the conduct or decision.[47] To demonstrate liability under a § 1983 theory of ratification, "[t]he final policymaker must not only approve the decision, but also adopt the basis for the decision, and the ratification must be the moving force, or cause, of the alleged constitutional violation."[48]

Plaintiffs' Complaint alleges,

---

[46] Docket No. 1, at 8.

[47] *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1186 (10th Cir. 2010).

[48] *Dempsey v. City of Baldwin*, 143 F. App'x 976, 986 (10th Cir. 2005).

11

Defendant John Coyle was the lieutenant in charge of the Narcotics Unit and the supervisor of Officers McCarthy, Beardshall, Lund, and Salmon. He not only tolerated known wrongdoings by officers within his unit, but he also actively participated in the rampant corruption, as evidenced by his assault on Plaintiff Terry Christiansen.[49]

Plaintiffs are informed and believe that Does 1 through 10 were police officers with the West Valley City and each of them approved, ratified, condoned, encouraged, participated in, and/or sought to cover up the continuing pattern and practice of misconduct, and/or civil rights violations by Defendants.[50]

Defendants Coyle, Nielsen, West Valley City and Does 7 through 10, knowingly and with gross negligence, maintain, permit, and ratify policies and customs which allow the occurrence of the types of wrongs set forth hereinabove, all in deliberate indifference to the constitutional rights of citizens.[51]

Further, the City's ratification of police misconduct, along with its failure to conduct adequate investigations of misconduct, led to the violations of the Plaintiffs' constitutional rights.[52]

Plaintiffs' allegations are merely conclusory and a formulaic recitation of the *Monell* ratification elements. The allegations do not allege who the authorized policymaker was that ratified the decisions of subordinates. The Complaint does not allege any facts regarding the "affirmative approval" required to occur in order to find *Monell* liability under a theory of ratification.[53] The Complaint does not state a plausible claim for relief and the allegations do nothing more than permit the Court to infer the mere possibility of misconduct.[54]

---

[49] Docket No. 1, at 3.

[50] *Id.* at 5.

[51] *Id.* at 7.

[52] *Id.* at 8.

[53] *See Swasey v. West Valley City*, No. 2:13-CV-00768-DN, 2015 WL 476114, at *6 (D. Utah Feb. 5, 2012) (citing *Patrick v. City of Overland Park*, 937 F.Supp 1491, 1499 (D. Kan. 1996)).

[54] *See Iqbal*, 556 U.S. at 679.

Thus, the Complaint, as alleged, fails to meet the pleading standards of Rule 12(b)(6). Therefore, Plaintiffs' claim for § 1983 *Monell* liability under the theory of ratification is inadequately pleaded.

3. *Failure to Train or Supervise*

A municipality cannot be held liable under § 1983 "for its failure to train or supervise . . . unless . . . [its] policymakers 'can reasonably have been deliberately indifferent to the need' for further training or supervision."[55]

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.[56]

Thus, under a theory of failure to train or supervise, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983."[57]

Plaintiffs' Complaint states,

> [Chief Nielsen] was the former police chief of the West Valley Police Department and ultimately responsible for the officers within his command. His lack of oversight and supervision, and his disregard for the constitutional rights of the

---

[55] *Bryson*, 627 F.3d at 789 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

[56] *Id.* (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998)).

[57] *City of Canton*, 489 U.S. at 389.

public, resulted in the wrongdoings alleged herein, and constitutional violations in the seizure and arrest of multiple individuals in West Valley City.[58]

West Valley City continued the employment of McCarthy, Beardshall, Lund, and Salmon, and allowed little to no supervision of these officers in spite of the fact that several of these officers had prior citizen complaints for misconduct. Defendant Coyle was a lieutenant with the West Valley Police Department and allowed the rampant corruption, as well as participated in the corruption within the department, allowing officers in the Narcotics Unit to abuse the suspects and arrest Brandy Christiansen without probable cause, wherein she spent five days in custody.[59]

The City's deliberate indifference in the training of its law enforcement officers related to the use of reasonable force and lawful seizures, as well as the deliberate indifference by the police department's hierarchy to the safety of its citizens or the adherence to the Constitution's protection of individual rights, are the moving force behind the misconduct engaged in by the officers as alleged herein. Were it not for this indifference, Defendants would not have been able to abuse Plaintiffs so easily. The widespread corruption and misconduct of West Valley City officers are all factors leading to the violation of Plaintiffs' constitutional rights.[60]

Again, Plaintiffs' allegations are nothing more than the recitation of the elements of a *Monell* claim based on the theory of failure to train or supervise. The allegation that Chief Nielsen, who presumably had policymaking authority, did not adequately supervise police officers is insufficient. The Complaint lacks any factual allegations that Chief Nielsen had notice, actual or constructive, that his alleged failure to train or supervise would be substantially certain to result in constitutional violations. Additionally, the Complaint lacks any factual allegation that Chief Nielsen deliberately chose to disregard the risk of such harm.

As to the general allegations that West Valley City failed to adequately train or supervise its employees, these allegations fail because they do not identify a policymaker whose deliberate

---

[58] Docket No. 1, at 3

[59] *Id.* at 7.

[60] *Id.* at 8.

or conscious choice not to train or supervise led to constitutional violations.  The allegations against Chief Nielsen and West Valley City for *Monell* liability under the theory that it failed to train of supervise are nothing more than bare accusations that recite the elements of the claim.  Therefore, Plaintiffs' claim for § 1983 *Monell* liability under the theory of ratification is inadequately pleaded.

Thus, the Court will dismiss the *Monell* claim against West Valley City contained within Plaintiffs' second cause of action with prejudice.  If, after discovery, Plaintiffs believe that they can sufficiently amend their Complaint with respect to the § 1983 *Monell* claim to comply with the Rule 12(b)(6) standards, the Court will entertain a motion to do so at such time.

C.  STATE-LAW CLAIM

Defendants argue that Plaintiffs' state-law claim should be dismissed because Plaintiffs have failed to file the required $300.00 undertaking at the time Plaintiffs filed the Complaint.[61]  Plaintiffs contend that their failure to file an undertaking is an affirmative defense that cannot be asserted in a Rule 12(c) motion.

Generally, affirmative defenses may not be raised in motions to dismiss, however "an affirmative defense may be raised in a motion to dismiss . . . 'if the defense appears plainly on the face of the complaint itself.'"[62]  Determining whether Plaintiffs filed an undertaking does not require an in-depth factual inquiry.  The Court can determine whether Plaintiffs filed the appropriate undertaking by examining the docket.

---

[61] Docket No. 19, at 7.

[62] *Lee v. Rocky Mountain UFCW Unions & Emp'rs Trust Pension Plan*, 13 F.3d 405, 1993 WL 482951, at *1 (10th Cir.1993) (unpublished) (quoting *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965)).

In Utah, under the Governmental Immunity Act of Utah, a plaintiff making a claim against an employee of a government entity must file an undertaking of at least $300.00 at the time of the filing of the claim.[63] The Court cannot allow Plaintiffs to submit the undertaking after filing their Complaint and the appropriate remedy for failure to file the undertaking at the appropriate time is dismissal without prejudice.[64]

Plaintiffs did not file an undertaking at the time of filing their Complaint. Therefore, Plaintiffs' third cause of action is dismissed without prejudice.

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Rule 12(c) Motion (Docket No. 19) is GRANTED as set forth above.

DATED this 22nd day of June, 2015.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[63] *See* Utah Code Ann. § 63G-7-601(2).

[64] *Rippstein v. City of Provo*, 929 F.2d 576, 578 (10th Cir. 1991).